**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THOMAS BEALE,<br>Plaintiff,<br><br>v.<br><br>MARIROSA LAMAS, Superintendent,<br>SCI-Chester, *et al.*,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 2:20-cv-05137-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.** **August 24, 2026**

## I. INTRODUCTION

*Pro se* Plaintiff Thomas Beale ("Beale") is currently incarcerated at a Pennsylvania state correctional institution. He brought this action, asserting several constitutional violations under 42 U.S.C. § 1983 against numerous correctional employees and a doctor contracted to provide medical services at Beale's correctional institution. At the summary judgment stage, the Court granted in part and denied in part Defendants' motions for summary judgment as to Beale's claims against the correctional employees. However, the Court determined that Defendants' motion failed to address all claims raised by the Plaintiff, and accordingly ordered supplemental briefing. Specifically, the Court ordered briefing on two issues: (1) the Eighth Amendment claim for exposure to Environmental Tobacco Smoke ("ETS") against SCI-Chester Corrections Officer J. Lees ("C.O. Lees"), and (2) the First Amendment retaliation claim against Mark Wahl, Deputy Superintendent, Centralized Service at SCI-Chester ("D.S. Wahl"), G. Arais, Security Lieutenant at SCI-Chester ("Lt. Arias"), and Neko Bourne, Unit Manager at SCI-Chester ("U.M. Bourne").

In compliance with this Court's Order, Defendants C.O. Lees, D.S. Wahl, Lt. Arias and U.M. Bourne (collectively "Defendants") filed their Supplemental Brief in Support of Summary Judgment. Beale filed a response in opposition, and Defendants subsequently filed a reply in support of their Supplemental Brief. This opinion resolves the outstanding issues identified in the Order and addressed in the supplemental briefing and related responses. For the reasons set forth below, the Court will grant summary judgment in favor of Defendants on these issues.

## II. FACTUAL BACKGROUND

Plaintiff, an inmate at SCI-Chester, alleges that Defendants violated his constitutional rights based on (1) their alleged failure to address his exposure to tobacco smoke in his housing unit and (2) alleged retaliation after he authored a document criticizing SCI-Chester's handling of the COVID-19 pandemic.

### A. Alleged Exposure to Tobacco Smoke

Between February and May 2019, Plaintiff alleges he was repeatedly exposed to tobacco smoke in his housing unit despite his allergy to smoke. Pl.'s Resp. SUMF (ECF No. 179) ¶¶ 1-22. On numerous occasions, Plaintiff reported the odor of smoke to correctional officers, including C.O. Parker, C.O. Lyons, C.O. Goode Williams, C.O. Winstead, C.O. Devane, and C.O. Karasinski. *See* Defs.' SUMF (ECF No. 156) ¶¶ 1–33. Plaintiff contends these officers failed to adequately respond to his complaints. Defs.' SUMF ¶¶ 2, 5, 16, 20, 24, 28. Although Plaintiff frequently asserted that the officers did not investigate, he acknowledged in several instances that he did not know whether an investigation had occurred, explaining only that he never observed an officer leave the desk or patrol the unit after he reported the smoke. *See* Defs.' SUMF ¶¶ 2, 5, 16, 20, 24, 28; Pl.'s Resp. SUMF ¶¶ 2, 5, 16, 20, 24, 28.

Plaintiff also admits that he generally did not identify the inmate who was smoking or the source of the smoke when making his complaints. *See* Pl.'s Resp. SUMF ¶¶ 3, 7, 12, 17, 21, 29. He maintains that doing so would have required him to search the housing unit, which he claims would have endangered his health because of his smoke allergy and exceeded the responsibilities of an inmate. *See id.* Defendants further note that Plaintiff did not seek medical attention following most of these incidents and did not properly exhaust administrative remedies for several of them. *See* Defs.' SUMF ¶¶ 6–33. Plaintiff responds that he had already filed grievances concerning the recurring smoke issue and therefore believed additional grievances were unnecessary. *See* Pl.'s Resp. SUMF ¶¶ 6–33.

The record reflects one formal grievance, Grievance No. 791261, filed on March 12, 2019, in which Plaintiff complained of smoke exposure and alleged that C.O. Parker failed to investigate his complaint. See Defs' SUMF ¶ 7. The grievance was denied because C.O. Parker denied the incident and Plaintiff had not identified the source of the smoke or the inmate responsible. *See id.* Plaintiff maintains that identifying the smoker would have jeopardized his health. *See* Pl.'s Resp. SUMF ¶ 7.

Plaintiff also alleges that on May 21, 2019, he smelled tobacco smoke and lost consciousness. *See* Defs.' SUMF ¶¶ 31–33. He does not allege that he reported the incident to prison staff or that any correctional officer was present at the time, and Defendants contend Plaintiff filed no grievance regarding that incident. *See id.* Plaintiff again maintains that he had already grieved the ongoing smoke issue. *See* Pl.'s Resp. SUMF ¶¶ 32–33.

**B. Alleged Retaliation for 'Indiscretionary Acts of the DOC" Document**

In October 2020, Plaintiff authored a document entitled Indiscretionary Acts of the DOC, in which he criticized SCI-Chester's handling of the COVID-19 pandemic. *See* Defs.' SUMF ¶

57; Pl.'s Resp. SUMF ¶ 57. Plaintiff contends he sent the document to Senator Tim Kearney, who forwarded it to Senator John Kane. *See* Pl.'s Resp. SUMF ¶ 58.

On January 30, 2021, prison officials searched Plaintiff's cell after discovering handwritten materials containing institutional information, including prison count schedules and related security information. Plaintiff's journals were confiscated due to security concerns, and Plaintiff was placed in the Restricted Housing Unit ("RHU") for approximately eleven to fourteen days while the matter was investigated. *See* Defs.' SUMF ¶¶ 59–62; Pl.'s Resp. SUMF ¶¶ 59–62. Defendants maintain Plaintiff was housed in the RHU because officials believed his records contained sensitive institutional information, while Plaintiff disputes that his writings contained any confidential information. *See* Defs.' SUMF ¶ 62; Pl.'s Resp. SUMF ¶ 62.

Following his release from the RHU, Plaintiff alleges that prison officials retaliated against him by delaying his removal from Administrative Custody, revoking his Z-Code status, and otherwise treating him adversely because of Indiscretionary Acts of the DOC. *See* Defs.' SUMF ¶¶ 67–76; Pl.'s Resp. SUMF ¶¶ 67–76. Defendants contend Plaintiff has no evidence that Superintendent Eason, Deputy Superintendent Wahl, Unit Manager Bourne, or Unit Manager Neally ever read or were aware of the document before taking the challenged actions. *See* Defs.' SUMF ¶¶ 68–78. Plaintiff disputes that conclusion, asserting that the timing of the events and statements made by prison officials permit an inference that they were aware of the document and retaliated against him because of it. *See* Pl.'s Resp. SUMF ¶¶ 68–78.

Plaintiff further alleges that, on November 1, 2021, C.O. Norris prevented him from attending the law library time, causing him to miss a litigation deadline. *See* Defs.' SUMF ¶¶ 79–81. Plaintiff contends Norris acted in retaliation for his grievances, while Defendants maintain

Plaintiff has identified no evidence connecting Norris' actions to any protected activity. *See* Defs.' SUMF ¶¶ 79–81; Pl.'s Resp. SUMF ¶¶ 79–81.

## III. PROCEDURAL HISTORY

The full procedural history of this case has been recited in detail in this Court's May 21, 2024, Memorandum Opinion and Order resolving the initial Motions for Summary Judgment. *See* ECF Nos. 186, 187. For present purposes, the relevant history is what follows that Opinion.

On December 13, 2024, this Court issued an Order that additional briefing be submitted by Defendants on two issues: (1) the Eighth Amendment claim for exposure to ETS against C.O. Lees, and (2) the First Amendment Retaliation claim against D.S. Wahl, Lt. Arias, and U.M. Bourne. *See* ECF No. 193.

On January 9, 2025, Defendants filed the Supplemental Brief in Support of their Motion for Summary Judgement Pursuant to Court Order. *See* ECF No. 195. Then on April 17, 2025, Beale filed his Response to Defendants' Supplemental Brief. *See* ECF No. 203. On May 27, 2025, Defendants filed a Response in Support of their Supplemental Brief. *See* ECF No. 206.

## IV. LEGAL STANDARDS

### A. Motions for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). And a fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party. *Daniels v. City of Pittsburgh*, No. 22-1790, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023). At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *See Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) ("At the summary judgment stage, [the court's] role is 'not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial[.]'" (quoting *Anderson*, 477 U.S. at 249)). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

**B. *Pro Se* Litigants**

Courts are required to "liberally construe" filings by pro se litigants and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 898 (E.D. Pa. 2017). Where a plaintiff files their complaint *pro se*, a reviewing court must liberally construe his pleadings, and the court should apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name or explicitly cited it. *See id.*

Additionally, a *pro se* litigant's verified complaint, if it includes a declaration under penalty of perjury, may be treated as an affidavit for purposes of opposing summary judgment. *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985).

However, this leniency does not relieve *pro se* litigants of their obligations under Rule 56 of the Federal Rules of Civil Procedure. *Lloyd*, 251 F. Supp. 3d at 898. Specifically, a *pro se* plaintiff must still point to competent evidence in the record capable of refuting the defendant's motion for summary judgment. *Id*.

**C. Exhaustion of Administrative Remedies Generally**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "with respect to prison conditions" refers to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Section 1997e(a)'s mandatory exhaustion requirement promotes numerous and significant public policies, including:

> (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process.

*Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000).

There is no "futility" exception to the PLRA's administrative exhaustion requirement. *Id.* at 71. Thus, prisoners "must . . . exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process." *Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734).

In addition, "the PLRA exhaustion requirement requires proper exhaustion." *Id.* at 83. Requiring proper exhaustion "eliminate[s] unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (quoting *Porter*, 534 U.S. at 525). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (footnote omitted).

For purposes of determining whether Beale exhausted administrative remedies, the submission date of any grievance or similar document will be deemed the date written by Beale on the respective document, consistent with the prisoner mailbox rule. "The federal prisoner mailbox rule provides that a document is deemed filed on the date it is given to prison officials for mailing." *Glass v. Briggs*, No. 3:23-cv-182, 2024 U.S. Dist. LEXIS 13108, at *7 n.4 (M.D. Pa. 2024) (citing *Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011)).

If a prisoner does not properly exhaust his or her administrative remedies, the prisoner cannot file a lawsuit challenging prison conditions in federal court because he or she is procedurally defaulted from doing so. *Spruill v. Gillis*, 372 F.3d 218, 227-29 (3d Cir. 2004); *see Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) ("Under the PLRA, exhaustion is a precondition for bringing suit under § 1983.").

A prisoner cannot properly exhaust administrative remedies "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83. The prisoner also "may not satisfy the exhaustion requirement after the filing of his complaint." *Wallace v. Miller*, 544 F. App'x 40, 42 (3d Cir. 2013) (citing *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n.9 (3d Cir. 2002) and *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003)). Prisons must also comply with the demands of the system. *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). As soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it renders administrative remedies unavailable, and the prisoner is fully discharged from the PLRA's exhaustion requirement. *Id*.

"An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth*, 532 U.S. at 738). Administrative procedures are unavailable if they (1) "operate[] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) are "so opaque that it becomes, practically speaking, incapable of use," such as when "no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44; *see also Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002) (explaining that "[s]ection 1997e(a) only requires that prisoners exhaust such administrative remedies as are available").

The "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010). The court must resolve this issue "even if that determination requires the resolution of disputed facts." *Small*, 728

F.3d at 269 (citing *Drippe*, 604 F.3d at 781). Also, where Defendants assert the affirmative defense of failure to exhaust administrative remedies, they bear the burden of proving that Beale failed to exhaust his administrative remedies. *See Brown*, 312 F.3d at 111 ("Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant.").

The record shows that Beale is not a stranger to the grievance process; rather, he is a prolific filer of grievances and is well aware of the process for filing and appealing from the disposition of those grievances. Therefore, the Court is satisfied that Beale was well versed in the DOC's grievance process and that this process was wholly available to him at all times relevant to the allegations in the Amended Complaint.[1]

## V. DISCUSSION

### A. Eighth Amendment Claim for Exposure to ETS Against C.O. Lees

Beale alleged in his First Amended Complaint that on April 29, 2019, he complained to C.O. Lees about ETS, but C.O. Lees did nothing. *See* Amended Compliant ("Am. Compl.") (ECF No. 54) ¶ 40. However, Beale has failed to produce any evidence of a timely filed grievance

[1] Concerning the DOC's grievance procedure:

> DC-ADM 804 provides a general, though rigorous, mechanism for inmate grievances. An inmate's submission of a written grievance is reviewed and results in an Initial Review Response or Rejection explaining the disposition of the inmate's grievance. Upon receipt of either response, an inmate has fifteen days to file an appeal with the Facility Manager. DC-ADM 804, § 2.A. Upon the Facility Manager's resolution of that appeal, the inmate may file for Final Review by the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). DC-ADM 804, § 2.B.

*Moore v. Lamas*, No. 22-1007, 2023 WL 371397, at *2 (3d Cir. Jan. 24, 2023) (internal footnote omitted); *see also* Commonwealth of Pennsylvania Department of Corrections, Policy Statement: Inmate Grievance System – DC-ADM 804 (effective as of May 1, 2015), *available at*: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf.

concerning this complaint against C.O. Lees. Defendants claim in their Supplemental Brief that as a result, Beale has failed to exhaust his administrative remedies as to his Eighth Amendment claim against C.O. Lees. ECF No. 195 at 5.

Beale argues in his response to Defendants' Supplemental Brief that summary judgment should not be granted on the basis that Defendants failed to raise the exhaustion defense in the initial summary judgment phase. ECF No. 203 at 2. This argument is unavailing as Supplemental Briefing was explicitly ordered by this Court to address the omission. *See* ECF No. 193.

Additionally, Beale concedes in his Response to Defendants' Supplemental Brief, that he has failed to exhaust administrative remedies as to this claim. ECF No. 203 at 4.

Accordingly, the Court will grant summary judgment in favor of C.O Lees on Beale's ETS claim for failure to exhaust administrative remedies.

**B. First Amendment Retaliation Claims**

To establish a First Amendment Retaliation claim pursuant to section 1983, a plaintiff must show that "(1) [they] engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights,' and (3) 'a causal link existed between the constitutionally protected conduct and the retaliatory action'" *Baloga*, 927 F.3d at 752 (quoting *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80-81 (3d Cir. 2018)).

As to the third element, a plaintiff must "demonstrate[] that [their] exercise of a constitutional right was a substantial or motivating factor in the challenged decision." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). If they do, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.*

If there is no direct evidence of causation, a plaintiff can establish causation through circumstantial evidence by proving either:

> (1) an usually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof, the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation.

*Beyer v. Borough*, 428 F. App'x 149, 154-55 (3d Cir. 2011) (quoting *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). "The decision-makers must be aware of the protected conduct for it to be a substantial or motivating factor in a decision." *Id.* at 155.

A prisoner's filing of grievances against prison officials is a constitutionally protected activity, forming the basis for a retaliation claim if adverse actions are taken in response to such grievances. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). When an inmate alleges that retaliation rendered the administrative grievance process unavailable, the issue of exhaustion is analyzed as part of the second element of the retaliation claim.

The Third Circuit evaluates such claims using a two-pronged test that incorporates both subjective and objective components. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). As such, they have developed a two-prong analysis. *Id*. The test—typically applied in the context of threats—requires an inmate to show: (1) that "the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process" and (2) that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Id*.

The Court will now address Beale's retaliation claims against the D.S Wahl, Lt. Arias, and U.M. Bourne bellow.

**1. D.S. Wahl**

Beale claims that Deputy Superintendent Wahl retaliated against him for filing a Request to Staff and several grievances by making false statements concerning his Z-Code status and cell assignments in written responses. *See* ECF No. 203 at 5–8, 12–14. These allegations present two distinct retaliation theories.

The first concerns Beale's March 24, 2021 Request to Staff and Grievance No. 921525, both of which challenged the removal of his Z-Code status following his discussion with Unit Manager Bourne. ECF No. 203 at 5–7. Beale alleges that Wahl retaliated against him for pursuing these complaints by making false statements in his responses. Specifically, in March, 2021, Wahl responded to the Request to Staff by stating that he did not observe any violation and assumed Beale's court-ordered Z-Code status was limited to one or two years. *See* ECF No. 54 ¶¶ 249–50; ECF No. 203 at 6–7, 13–14. Similarly, in his Initial Review Response to Grievance No. 921525, Wahl stated that "the DOC are in full compliance with the court ordered single-cell status," that the single-cell order was for one year subject to annual review, and that Beale's Z-Code status was removed after the annual review process determined there was no longer a penological need for a single cell. ECF No. 203 at 36.

The second theory concerns Grievance Nos. 933207 and 933545, which challenged SCI-Chester's assignment of unvaccinated inmates to Beale's cell despite his vaccination status. *See* ECF No. 203 at 5–8. Beale alleges that Wahl retaliated against him for filing those grievances by making false statements in his response to Grievance No. 933545. Specifically, Wahl stated that (1) the institution makes "every attempt" to house vaccinated inmates separately from unvaccinated inmates and (2) Beale was "not approved for a Z-Code and this has been confirmed with the courts." ECF No. 203 at 64.

Liberally construed, Beale's Amended Complaint asserts retaliation claims based on these alleged misrepresentations. *See* ECF No. 54 ¶¶ 249–61, 280–314. To pursue those claims, however, Beale was required to exhaust available administrative remedies concerning the alleged retaliatory conduct. *See* 42 U.S.C. § 1997e(a). Although Beale filed grievances challenging his Z-Code status and cell assignments, he did not file any grievance alleging that Wahl retaliated against him by making false statements in his responses. Defendants therefore argue that Beale failed to exhaust his administrative remedies as to his retaliation claims against Wahl. *See* ECF No. 195 at 5–7.

Beale responds that the grievance process was unavailable. As to the Z-Code-related retaliation claim, he argues that Grievance No. 921525 was effectively exhausted because he appealed to the Facility Manager but never received a response, preventing further review. *See* ECF No. 203 at 9–12. As to the retaliation claim concerning unvaccinated cellmates, Beale argues that prison officials failed to timely respond to Grievance No. 933207 as required by DC-ADM 804, likewise rendering the administrative process unavailable. *See id.* at 5–8.

Defendants have not presented evidence that Beale received a response to his appeal of Grievance No. 921525. Accordingly, the grievance process was unavailable with respect to the claims raised in that grievance. Likewise, Defendants have not shown that SCI-Chester responded to Grievance No. 933207 within the fifteen-day period required by DC-ADM 804. ECF No. 203 at 5–7. Because prison officials failed to follow the grievance procedures, the administrative remedy process was unavailable to Beale as to the claims raised in that grievance. *See Ross,* 578 U.S. at 642 (finding that "[a]n inmate . . . must exhaust available remedies but need not exhaust unavailable ones.").

Although administrative remedies were unavailable to Beale with respect to Grievance Nos. 921525 and 933207, those grievances did not allege that Wahl retaliated against Beale by making false statements in his responses. Nor did any other grievance in the record raise such a retaliation claim. Accordingly, these grievances are not valid grievances for purposes of exhausting Beale's retaliation claims against Wahl. *See Robinson v. Superintendent Rockview* SCI, 831 F.3d 148, 153 (3d Cir. 2016) (quoting *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam)) ("[a] prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). Because Beale failed to file a valid grievance concerning Wahl's alleged retaliatory conduct, he failed to exhaust his administrative remedies as to these claims.

Even assuming, however, that Beale exhausted his administrative remedies, his retaliation claims against Wahl fail on the merits. To establish a First Amendment retaliation claim, Beale must show, among other things, that he suffered an adverse action—i.e., action "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Baloga*, 927 F.3d at 752 (quoting *Palardy*, 906 F.3d at 80–81). Beale contends that Wahl's allegedly false statements regarding his Z-Code status constituted an adverse action because they were made in retaliation for Beale's grievances. ECF No. 203 at 12–13. Specifically, Beale argues that Wahl's statement that his Z-Code status was "not approved" and that this determination had been "confirmed with the courts" would deter an inmate from filing additional grievances challenging the loss of his single-cell status. *Id.* at 6, 13–14.

Although a sufficiently threatening or retaliatory false statement could, in some circumstances, constitute an adverse action, Beale's claim fails because the record does not support a finding that Wahl's statements deterred him from exercising his constitutional rights. Indeed,

after Wahl allegedly made the challenged statements, Beale continued to file grievances concerning his Z-Code status and related cell assignments. ECF No. 54 ¶¶ 261, 280–314. His continued pursuit of administrative remedies on the same subject demonstrates that he was not deterred from engaging in the protected activity at issue. Accordingly, even if Beale's retaliation claims were exhausted, no reasonable jury could conclude that Wahl's alleged statements constituted an adverse action sufficient to support a First Amendment retaliation claim. Wahl is therefore entitled to summary judgment on Beale's retaliation claims against him.

**2. Lt. Arias**

Beale's retaliation claim against Lt. Arias is based on Beale's alleged efforts to access the courts and his filing of a grievance. *See* ECF No. 203 at 7–8, 13–14. Specifically, Beale alleges that Lt. Arias retaliated against him for preparing legal materials for a lawsuit and for filing Grievance No. 915116 concerning missing materials. *See id.*

According to Beale, the alleged retaliation began on January 30, 2021, when prison officials searched his cell after discovering handwritten materials containing institutional information, including prison count schedules and related security information. *See* Defs.' SUMF ¶¶ 59–62; Pl.'s Resp. SUMF ¶¶ 59–62. During the investigation, Beale's journals and other documents were confiscated, and he was placed in the RHU for approximately eleven to fourteen days. *See id.* Beale alleges that the confiscated materials included documents he maintained for litigation purposes. *See id.* On February 11, 2021, Lt. Arias informed Beale that he had been cleared of the investigation and would be returned to general population. *See id.* Beale further alleges that, upon returning to his cell, he discovered that his belongings had been disturbed and that certain legal materials—including documents related to his lawsuit, a writing tablet, a copy of *The Indiscretionary Acts of The D.O.C.*, and other papers—were missing. *See id.*

Beale contends that Lt. Arias knew the confiscated materials were related to litigation because the documents contained case captions and other indications that they were legal materials. *See* ECF No. 203 at 7–8, 13–14. Beale therefore claims that Lt. Arias's actions were taken in retaliation for his attempt to access the courts and for filing Grievance No. 915116. *See id.*

Defendants argue that Beale failed to exhaust his administrative remedies as to this retaliation claim because he never filed a grievance alleging that Lt. Arias retaliated against him. Under the Prison Litigation Reform Act, a prisoner must properly exhaust available administrative remedies by presenting the same claim asserted in court through the prison's grievance process. *See* Civil Rights of Institutionalized Persons Act § 7, 42 U.S.C.A. § 1997e(a). Thus, to exhaust a retaliation claim against Lt. Arias, Beale was required to submit a grievance identifying retaliatory conduct by Lt. Arias.

Although Grievance Nos. 915116 and 926035 concern the confiscation of Beale's materials and relate to the underlying events, neither grievance alleges that Lt. Arias acted in retaliation for Beale's protected activity. *See* ECF No. 203 at 7–8. Rather, the grievances challenge the loss or confiscation of materials themselves. *See id.* Moreover, the record contains no grievance in which Beale alleged that Lt. Arias retaliated against him for accessing the courts or filing a grievance. *See id.* Because Beale failed to exhaust a retaliation claim against Lt. Arias through the grievance process, his First Amendment retaliation claim against Lt. Arias is procedurally defaulted.

Accordingly, Lt. Arias is entitled to summary judgment on Beale's First Amendment retaliation claim based on Beale's failure to exhaust administrative remedies.

**3. U.M. Bourne**

Beale asserts three retaliation claims against U.M. Bourne: (1) that Bourne moved him to a cell where he could not see the Officer's desk or mailbox after a misunderstanding with C.O. Brown regarding a Request to Staff form; (2) that Bourne placed another unvaccinated inmate in his cell after Beale filed a grievance resulting in the removal of a prior unvaccinated cellmate; and (3) that Bourne attempted to place another unvaccinated inmate in his cell after Beale's Z-Code status was reinstated following a hearing before Judge Conti. *See* ECF No. 203 at 9–12, 15–17.

**i. Cell Move After Misunderstanding with C.O. Brown**

Beale's first retaliation claim is based on his placement of a Request to Staff form in his cell door and his subsequent interaction with C.O. Brown on March 2, 2021, during which she allegedly sarcastically commented on him watching her. *See* ECF No. 54 ¶¶ 235–39; ECF No. 203 at 9–10. Beale contends that Bourne retaliated against him the following day by moving him to a cell from which he could no longer see the Officer's desk or mailbox. *See* ECF No. 54 ¶¶ 235–39; ECF No. 203 at 10, 15–16.

Beale has not identified any grievance concerning this incident, nor has he provided evidence of a grievance alleging that Bourne retaliated against him by moving his cell. Accordingly, Beale failed to exhaust his administrative remedies as to this claim.

Even assuming exhaustion, the claim would fail on the merits. Although a cell transfer could constitute an adverse action for purposes of a retaliation claim, Beale must also establish a causal connection between his protected conduct and the alleged retaliation. *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (prisoner alleging retaliation must show constitutionally protected conduct, an adverse action, and a causal link between the two). Beale has provided no evidence that Bourne knew about his interaction with C.O. Brown, the Request to Staff form, or

any related grievance before moving him. Without evidence that Bourne was aware of the protected conduct, temporal proximity alone is insufficient to establish causation. *See Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) ("[i]t is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct.").

**ii. Placement of Second Unvaccinated Inmate**

Beale next claims that Bourne retaliated against him by placing a second unvaccinated inmate in his cell after Beale filed Grievance No. 933207, which resulted in the removal of a prior unvaccinated cellmate. *See* ECF No. 203 at 10–12, 16–17.

The record does not support Beale's assertion that Bourne was aware of Grievance No. 933207 before placing the second unvaccinated inmate in his cell on June 25, 2021. Although Beale alleges that Bourne placed the inmate in retaliation for Grievance No. 933207, he offers no evidence that Bourne knew of the grievance at that time. Grievance No. 933207 was filed on June 23, 2021, but Bourne was not the subject of the grievance and did not author the response to it. Moreover, the Initial Review Responses for Grievance Nos. 933207 and 933545 were not issued until July 19, 2021, with the response to Grievance No. 933545 dated one minute before the response to Grievance No. 933207. ECF No. 195 at 15. Under DC-ADM 804, only the Facility Grievance Coordinator and/or a designated Grievance Officer would have access to grievances between their retrieval from the lockboxes and issuance of the Initial Review Responses. *Id.* Bourne was neither the Facility Grievance Coordinator nor the designated Grievance Officer for either grievance, and there is no evidence that she otherwise learned of Grievance No. 933207 before placing the inmate in Beale's cell. *Id.* Thus, Beale has failed to produce evidence from

which a reasonable jury could conclude that Bourne knew of Grievance No. 933207 when she placed the second unvaccinated inmate in his cell.

Because Beale has not produced evidence that Bourne was aware of the protected activity before the alleged adverse action, he cannot establish the required causal connection. *See Ambrose*, 303 F.3d at 493. In addition, Grievance No. 933207 does not allege retaliation by Bourne, and no other grievance in the record identifies this conduct as retaliatory. *See* ECF No. 203 at 10–12.

Beale therefore failed to exhaust administrative remedies as to this claim.

**iii. Attempted Placement of Inmate After Z-Code Reinstatement**

Beale's final retaliation claim concerns Bourne's alleged attempt to assign him a cellmate after Judge Conti reinstated his Z-Code status and directed that he remain single-celled. *See* ECF No. 54 ¶¶ 319–34; ECF No. 203 at 11–12, 16. Beale contends that Bourne attempted to violate his court-ordered single-cell status in retaliation for his prior grievance activity and success in obtaining reinstatement of his Z-Code status. *See* ECF No. 203 at 11–12, 16.

Unlike his other claims, the record supports that Bourne was aware of Beale's Z-Code status and the recent court Order. Beale alleges that Bourne directed staff to place another inmate in his cell and continued to do so even after C.O. Budd informed her that Beale had Z-Code status. *See* ECF No. 54 ¶¶ 319–33; ECF No. 203 at 15–16.

Beale filed Grievance No. 940745 on August 14, 2021, concerning Bourne's attempt to place another inmate in his cell and his stated intent to pursue a breach of the Settlement Agreement. ECF No. 54 ¶¶ 325, 334; ECF No. 203 at 10–11. Beale appealed the grievance to the Chief Secretary's Office of Inmate Grievances and Appeals and received no response. ECF No. 54 ¶ 398; ECF No. 203 at 10–11. The failure to respond rendered administrative remedies

unavailable as to any properly raised claims contained in that grievance. *See Robinson*, 831 F.3d at 153 (quoting *Powe*, 177 F.3d at 394).

Nevertheless, Grievance No. 940745 did not allege that Bourne acted in retaliation, nor does any other grievance in the record. *See* ECF No. 203 at 10–11. Because Beale failed to raise a retaliation claim through the grievance process, he did not exhaust his administrative remedies as to this claim. *See Robinson*, 831 F.3d at 153.

Accordingly, U.M. Bourne is entitled to summary judgment on each of Beale's First Amendment retaliation claims against her.

## V. CONCLUSION

For all of the foregoing reasons, the Court will grant the Commonwealth Defendants' Motions for Summary Judgment on all the claims at issue against Commonwealth Defendants C.O. Lees, D.S. Wahl, Lt. Arias, and U.M. Bourne.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge